# EXHIBIT 10



10 of 18 DOCUMENTS

Copyright 2006 Inside Washington Publishers
All Rights Reserved
Inside CMS

November 16, 2006

**SECTION:** Vol. 9 No. 23

**LENGTH:** 592 words

**HEADLINE:** CLASS-ACTION SUIT AGAINST DRUG GIANTS MAY ACCELERATE AWP DEMISE

**BODY:**

   The outcome of a closely watched class-action lawsuit against several drug makers for allegedly inflating their drugs' average wholesale prices (AWPs), which went to trial at the U.S. District Court in Boston Nov. 6, may inspire a slew of similar challenges and accelerate the expected demise of CMS' embattled AWP reimbursement rate, plaintiffs' lawyers and health care stakeholders say. A win for the plaintiffs may prompt an even larger class-action lawsuit next year alleging inflated AWPs have increased Medicare Part D co-payments.

   The trend to legally challenge manufacturer-submitted AWPs, used for reimbursement in Medicare Part B and Medicaid, is led by plaintiffs' attorneys hoping to yield huge returns after lawmakers and Bush administration officials declared the reimbursement rates inadequate and outdated, sources say.

   "This is all very much driven by plaintiffs' attorneys," a Washington, DC, lawyer said. "We'll see many more trials and cases all tied up on AWP."

   Eventually, the lawyer added, the plaintiffs bar will move on to other promising business -- but not before several dozen pending cases are decided.

   The consolidated class-action lawsuit in Boston alleged that several dozen large drug manufacturers fraudulently overstated their drugs' AWPs, overcharging beneficiaries, Medicare and Medicaid. A trial involving four of the companies -- AstraZeneca, Johnson & Johnson, Schering-Plough and Bristol-Myers Squibb Co. -- started Nov. 6 after U.S. District Court Judge Patti Saris rejected the defendants' motion to dismiss the case.

   The companies had argued that "AWP is a term of art and means a reference price or benchmark used for price negotiations, rather than an average of actual prices," according to Saris. The judge ruled, however, that a term of art must have an "established and settled meaning in the industry." She added that industry opinions about what AWP actually measures vary.

   Plaintiffs are represented by the Seattle-based law firm Hagens Berman Sobol Shapiro (HBSS), which recently announced a settlement with AWP data collector and publisher First Databank Inc. The law firm had accused First

Page 2
CLASS-ACTION SUIT AGAINST DRUG GIANTS MAY ACCELERATE AWP DEMISE Inside CMS November 16, 2006

Databank of conspiring with McKesson Corp., a wholesaler, to maximize profits by arbitrarily inflating the price "spread" between AWP and the wholesale acquisition cost, a rate wholesalers often use when selling drugs to pharmacies (see Inside CMS, Nov. 2).

HBSS' public relations contractor called the current Boston trial a "test case" for another, much larger class-action lawsuit the firm hopes to push to trial early next year, involving the impact inflated AWPs have on Part D co-payments.

The effect of drug prices on Part D cost-sharing amounts is less clear-cut, however, the Washington, DC, lawyer noted, since most Part D plans charge nominal co-pays that are not based on a drug's price.

Still, "If they are even partially successful [in the current Boston trial], whatever ruling the judge makes will apply to many other trials," the lawyer said.

For instance, AWP cases have been brought by state attorneys general in more than 20 states -- largely under state consumer protection laws. Some have recently been removed from state courts to Boston, suggesting that they may be consolidated.

"The belief is that AWP is so discredited that it's going to go away," the lawyer said. "Pharma companies have to assess how the market will be impacted by changing reimbursement formulas."

The Academy of Managed Care Pharmacy recently started such a review of reimbursement rates and formulas (see Inside CMS, Nov. 2).

**LOAD-DATE:** November 16, 2006