Kevin H. Marino
John A. Boyle
MARINO, TORTORELLA & BOYLE, P.C.
437 Southern Boulevard
Chatham, New Jersey 07928-1488
Tel: (973) 824-9300
Fax: (973) 824-8425
*Attorneys for Defendant*
*CVS Caremark Corporation*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. DAVID MORGAN,<br><br>          Plaintiff,<br><br>    v.<br><br>EXPRESS SCRIPTS, INC., et al.,<br><br>          Defendants. | Civil Action No. 05-01714 (DMC)(JAD)<br><br>**Return Date: May 20, 2013**<br><br>**MEMORANDUM IN SUPPORT OF<br>CVS CAREMARK'S MOTION TO<br>DISMISS THIRD AMENDED<br>COMPLAINT**<br><br>**Oral Argument Requested**<br><br>**Document Electronically Filed** |

*Of Counsel*

Hope S. Foster
William A. Davis
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
701 Pennsylvania Ave., NW, Suite 900
Washington, DC 20004
Tel: (202) 434-7303
Fax: (202) 434-7400 (Fax)

*Attorneys for Defendant*
CVS Caremark Corporation

**TABLE OF CONTENTS**

**Page**

I.    Preliminary Statement ...................................................................................................1

II.    Factual Background.......................................................................................................2

III.   This Court Should Dismiss All Causes of Action Against Caremark Under Rule
12(b)(6) Because Relator Has Failed Both to Assert Any Non-Conclusory
Allegations of Wrongdoing By Caremark and All of the Elements of Each Cause
of Action............................................................................................................................4

    A.    First Cause of Action (False Claim - 3729(a)(1)):  Relator Fails to Allege
That Caremark Knowingly Presented a False or Fraudulent Claim. ......................6

    B.    Second Cause of Action (False Statement - 3729(a)(2)): Relator Does Not
Identify a False Statement That Caremark Made to a Government Health
Plan. ....................................................................................................................8

    C.    Third Cause of Action (Reverse False Claim - 3729(a)(7)): Relator Does
Not Allege That Caremark Had Any Obligation to Return Funds to Any
Government Health Plan..........................................................................................9

    D.    Fourth Cause of Action (Conspiracy - 3729(a)(3)):  Relator Does Not
Allege That Caremark Made an Agreement with Any of the Defendants.............10

    E.    Fifth Cause of Action (False Claim Through Breach of Contract): Relator
Does Not Identify Any Contract Between Caremark and Any Government
Health Plan............................................................................................................11

    F.    Sixth Cause of Action (False Claim Through Breach of Implied
Covenant): Relator Has Not Alleged a Breach of the Implied Covenant of
Good Faith and Fair Dealing.................................................................................13

    G.    Seventh Cause of Action (False Claim Through Breach of Fiduciary
Duty): Relator Does Not Identify the Source of Caremark's Alleged
Fiduciary Duty to Any Government Health Plan. ................................................14

    H.    Eighth Through Thirtieth Causes of Action: Relator's State FCA Claims
Fail to Allege Any Caremark Conduct With Regard to Any of the States
Listed in These Causes of Action. .......................................................................15

    I.    Relator Pleads Only Conclusory Allegations of "Other Pricing Schemes"
and Fails to Allege That the Purported Pricing Schemes Caused FCA
Violations (Third Amended Complaint ¶¶ 198-225)...........................................16

IV.   Conclusion..................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*AccuSoft Corp. v. Palo*,
   237 F.3d 31, 45 (1st Cir. 2001)...................................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................... passim

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544  (2007)................................................................................................5, 6

*Bickley v. Caremark Rx, Inc.*,
   361 F. Supp. 1317 (N.D. Ala. 2004).....................................................................15

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*,
   864 A.2d 387 (N.J. 2005).......................................................................................13

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
   474 F.3d 463 (7th Cir. 2007) ..................................................................................15

*Foglia v. Renal Ventures Mgmt.*,
   No. 09-1552, 2012 U.S. Dist. LEXIS 139160  (D.N.J. Sept. 26, 2012) ............5, 14

*Gasoline Sales, Inc. v. Aero Oil Co.,*
   39 F.3d 70 (3d Cir. 1994) .........................................................................................2

*Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
   559 U.S. 280, 130 S. Ct. 1396 (2010).....................................................................15

*Hutchins v. Wilentz, Goldman & Spitzer*,
   253 F.3d 176 (3d Cir. 2001)......................................................................................7

*In re Dynegy, Inc. Secs. Litig.*,
   339 F. Supp. 2d 804 (S.D. Tex. 2004) ...................................................................12

*In re Express Scripts, Inc. Pharm. Benefits Mgmt. Litig.*,
   No. 1672, 2007 U.S. Dist. LEXIS 44722 (E.D. Mo. June 20, 2007).....................14

*In re Rockefeller Ctr. Props. Inc. Secs. Litig*,
   311 F.3d 198 (3d Cir. 2002).....................................................................................6

*Jang v. Boston Sci. Scimed, Inc.*,
   817 F. Supp. 2d 409 (D. Del. 2011).......................................................................13

*Jang v. Boston Sci. Scimed, Inc.*,
   No. 10-681, 2012 U.S. Dist. LEXIS 106627 (D. Del. July 31, 2012) ....................13

*Kennard v. Comstock Resources, Inc.*
363 F.3d 1039 (10th Cir. 2004) ...................................................................10

*Massachusetts v. Schering-Plough Corp.*,
779 F. Supp. 2d 224 (D. Mass. 2011) .......................................................15

*Mercado v. Bank of Am., N.A.*,
No. 2:12-01123, 2012 U.S. Dist. LEXIS 163395 (D.N.J. Nov. 15, 2012) .................12, 13, 14

*Mulder v. PCS Health Sys., Inc.*,
432 F. Supp. 2d 450 (D.N.J. 2006) ...........................................................15

*Poling v. K. Hovnanian Enters.*,
99 F. Supp. 2d 502 (D.N.J. 2000) .............................................................16

*United States ex rel. Barlett v. Tyrone Hosp., Inc.*,
234 F.R.D. 113 (W.D. Pa. 2006) ..........................................................10, 11

*United States ex rel. Berge v. Bd. of Trustees of Univ. of Ala.*,
104 F.3d 1453 (4th Cir. 1997) ....................................................................9

*United States ex rel. Feldstein v. Organon, Inc.*,
No. 07-CV-2690, 2009 U.S. Dist. LEXIS 30093 (D.N.J. Apr. 7, 2009) ...................................6

*United States ex rel. Lobel v. Express Scripts, Inc.*,
351 F. App'x 778 (3d Cir. 2009) ................................................................7

*United States ex rel. Piacentile v. Sanofi Synthelabo, Inc.*,
No. 05-2927, 2010 U.S. Dist. LEXIS 137895 (D.N.J. Dec. 31, 2010) ....................................7

*United States ex rel. Pilecki-Simko v. Chubb Inst.*,
443 F. App'x 754 (3d Cir. 2011) ..........................................................4, 5, 8

*United States ex rel. Quinn v. Omnicare, Inc.*,
382 F.3d 432 (3d Cir. 2004).......................................................................10

*United States ex rel. Schmidt v. Zimmer, Inc.*,
386 F.3d 235 (3d Cir. 2004).................................................................6, 8, 9

*United States ex rel. Schumann v. Astrazeneca PLC,*
No. 03-5423, 2012 U.S. Dist. LEXIS 44708 (E.D. Pa. Mar. 30, 2012).....................................2

*United States ex rel. Steury v. Cardinal Health, Inc.*,
625 F.3d 262 (5th Cir. 2010) ...................................................................12

*United States ex rel. Wilkins v. United Health Group, Inc.*,
659 F.3d 295 (3d Cir. 2011).......................................................................6

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*
    525 F.3d 370 (4th Cir. 2008) ...............................................................................12

**STATUTES**

31 U.S.C. § 3729(a)(1) (2008) ..............................................................................6, 8

31 U.S.C. § 3729(a)(2) (2008) ..............................................................................8, 9

31 U.S.C. § 3729(a)(3) (2008) ............................................................................10, 11

31 U.S.C. § 3729(a)(7) (2008) ............................................................................9, 10

**FEDERAL RULES**

Fed. R. Civ. P. 8(a) ........................................................................................ passim

Fed. R. Civ. P. 9(b) ........................................................................................ passim

Fed. R. Civ. P. 12(b)(1). ......................................................................................4

Fed. R. Civ. P. 12(b)(6)................................................................................... passim

## I.      Preliminary Statement

CVS Caremark Corporation ("Caremark") moves to dismiss with prejudice Plaintiff David Morgan's ("Relator") Third Amended Complaint — which both the Federal Government and the affected state governments have declined to join — because Relator has only offered conclusory allegations and has failed to connect Caremark in any way to the purported wrongdoing that is allegedly at the heart of this case.  Relator thus has failed to meet his bedrock pleading obligations as to Caremark.  Rather than provide any facts showing how Caremark allegedly violated the False Claims Act ("FCA") and its state analogues, Relator's Third Amended Complaint alleges a scheme by First DataBank, Inc. ("First DataBank"), a publisher of drug pricing information, and McKesson Corporation ("McKesson"), a drug wholesaler, to inflate the prescription drug prices (known as average wholesale price or "AWP") that First DataBank published in its widely used National Drug Data File Plus pricing compendium ("Blue Book").

Despite its length, the Third Amended Complaint does not allege any facts demonstrating that Caremark knew of, or participated in, the alleged First DataBank/McKesson AWP-inflation scheme.  In fact, only ten of the Third Amended Complaint's four hundred and twenty numbered paragraphs even mention Caremark, and none of those paragraphs even comes close to alleging — in the required non-conclusory fashion — wrongdoing by Caremark.[1]

Undeterred, with no allegations regarding Caremark's alleged unlawful conduct, Relator tries to entangle Caremark in McKesson's and First DataBank's alleged scheme to inflate Blue Book AWP solely by contending that certain government health plans sometimes, but not

---

[1]      Third Amended Complaint, ¶¶ 28, 31, 35, 149, 155, 176, 177, 189, 202, 225.  Four of those paragraphs simply provide background information about Caremark and its general role in the pharmaceutical industry (*Id.*, ¶¶ 28, 31, 35, 149); two allege that Relator has in the past conducted audits of Caremark as part of his business (*Id.*, ¶¶ 176, 177); and the remaining four contain purely conclusory, non-specific allegations (*Id.*, ¶¶ 155, 189, 202, 225).

always, reimbursed Caremark (like many others) using Blue Book AWP.  But using Blue Book AWP for reimbursements is a normal and entirely legal business practice in which many companies engage.  Simply put, regardless of what McKesson and First DataBank allegedly did or did not do to inflate AWP, Caremark had no involvement in or knowledge of those acts, and Relator fails entirely to allege that Caremark did.

By failing to describe anything about Caremark's alleged unlawful conduct, Relator does not satisfy the general pleading standard of Fed. R. Civ. P. 8(a) or the heightened pleading standard of Fed. R. Civ. P. 9(b).  Specifically, the Third Amended Complaint suffers from pervasive, fatal pleading deficiencies as to Caremark, including failure to: (1) plead any facts describing Caremark's alleged unlawful conduct; (2) plead essential elements of the causes of action against Caremark; (3) state plausible claims for relief against Caremark; (4) plead any facts that Caremark violated any of the state FCAs; and (5) allege Caremark's violations of the FCA with particularity.  Each of these failings on its own should result in dismissal with prejudice of the Third Amended Complaint.  Relator's causes of action suffer from all five.  Despite four complaints over eight years, Relator has still not met his basic pleading obligations as to Caremark.  The Court should therefore dismiss all causes of action against Caremark with prejudice under both Rules 12(b)(6) and 9(b).[2]

## II.    Factual Background

Caremark is a pharmacy benefit manager ("PBM").  (Third Amended Complaint, ¶ 31.) According to Relator, PBMs, such as Caremark, "subcontract with health plans, including government health plans, to administer the prescription drug coverage portion of the [health]

---

[2]    *See United States ex rel. Schumann v. Astrazeneca PLC,* No. 03-5423, 2012 U.S. Dist. LEXIS 44708, at *15-16 (E.D. Pa. Mar. 30, 2012) ("The Third Circuit has found that where a plaintiff is seeking to modify allegations in hopes of remedying factual deficiencies in prior pleadings . . . 'three attempts at a proper pleading is enough.'" (quoting *Gasoline Sales, Inc. v. Aero Oil Co.,* 39 F.3d 70, 74 (3d Cir. 1994))).

plan." (*Id.*, ¶ 148.)  In that capacity, among other things, Caremark: (1) "establish[es] and

maintain[s] a network of retail pharmacies that agree to fill and dispense prescription drugs for a

negotiated price"; (2) provides advice to "health plans and their members concerning the design

of prescription drug plans"; (3) "develop[s] and implement[s] prescription drug formularies"; (4)

"negotiat[es] and obtain[s] discounts, rebates, and other funds from drug manufacturers"; and (5)

provides "basic claim processing services." (*Id.*, ¶¶ 148, 150.)

     First DataBank publishes Blue Book, one of the two leading reference publications listing

AWP for prescription drugs.  (*Id.*, ¶ 2.)  Another AWP pricing reference is Thomson Medical

Economics' "The Drug Topics," commonly known as "Red Book." (*Id.*)  Various entities in the

pharmaceutical industry, including third-party payors, use AWP to calculate the reimbursement

amount for prescription drugs as AWP minus some percentage (e.g., AWP-15%).  (*Id.*, ¶¶ 21,

67.)  McKesson is a prescription drug wholesaler.  (*Id.*, ¶ 35.)  According to Relator, wholesalers

act as intermediaries that purchase prescription drugs in bulk from manufacturers and "add value

by providing repackaging, labeling, and data services to retail pharmacy clients."  (*Id.*, ¶ 64.)

     Most of the Third Amended Complaint details Relator's theory that First DataBank, at

McKesson's urging and with its assistance, intentionally inflated Blue Book AWP for brand-

name prescription drugs.  (*See*, *e.g.*, *id.*, ¶¶ 70-132.)[3]  The AWP-inflation scheme allegedly

created a uniform spread between AWP in Blue Book and that in Red Book.  (*Id.*, ¶¶ 2, 9.)

Relator claims that, in addition to orchestrating the AWP-inflation scheme, First DataBank and

McKesson undertook affirmative, sophisticated steps to conceal it.  (*Id.*, ¶¶ 70-136.)  For

example, First DataBank allegedly falsely represented that it calculated Blue Book AWP using

---

[3]    McKesson entered into a settlement agreement with the United States dated April 3, 2012
(Docket No. 46).  McKesson also entered into a settlement agreement with fifteen states on July
26, 2012 and the fifteen states filed a Notice of Dismissal as to McKesson (Docket No. 125).

surveys of actual drug prices charged by drug wholesalers.  First DataBank also allegedly communicated in false and misleading ways to conceal the AWP-inflation scheme.  (*Id.*, ¶¶ 11, 18, 118-132.)

Nowhere among his allegations describing the purported scheme to inflate Blue Book AWP, however, does Relator mention Caremark.  (*Id.*, ¶¶ 70-132.)  Nor does the Third Amended Complaint allege that Caremark had a hand in setting Blue Book AWP.  Relator could not make such an allegation because Caremark had no role in that process.  (*Id.*, ¶¶ 147-197.)  There is not a single allegation that Caremark knew about the AWP-inflation scheme, furthered efforts to inflate Blue Book AWP, misrepresented AWP or concealed the scheme.  Instead, Relator attempts to drag Caremark into the purported AWP-inflation scheme simply because, as one of the "PBM Defendants," Caremark's clients sometimes, but not always, used Blue Book to calculate reimbursements.  (*Id.*, ¶¶ 18-24.)

## III. This Court Should Dismiss All Causes of Action Against Caremark Under Rule 12(b)(6) Because Relator Has Failed Both to Assert Any Non-Conclusory Allegations of Wrongdoing By Caremark and All of the Elements of Each Cause of Action.

All thirty causes of action suffer from the same defects: Relator fails both to allege one or more of the elements of each cause of action and to describe Caremark's alleged unlawful conduct or statements.  These pleading deficiencies pervade the Third Amended Complaint in its entirety.  Because of these fundamental pleading failures, this Court should not allow Relator to proceed with his case against Caremark and should dismiss all of Relator's causes of action under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[4]

On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true the complaint's well-pleaded facts.  *United States ex rel. Pilecki-Simko v. Chubb Inst.,* 443 F. App'x

---

[4]   Caremark reserves its right to move to dismiss Relator's Third Amended Complaint under Fed. R. Civ. P. 12(b)(1).

754, 760 (3d Cir. 2011). But as the Supreme Court explained in *Ashcroft v. Iqbal*, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 556 U.S. 662, 678 (2009). And as the *Iqbal* Court made clear, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Foglia v. Renal Ventures Mgmt.*, No. 09-1552, 2012 U.S. Dist. LEXIS 139160, at *6 (D.N.J. Sept. 26, 2012) (dismissing federal FCA claims and stating that a "court need not credit 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss").

Thus a court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *Iqbal*, 556 U.S. at 678. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's well-pleaded factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint should be dismissed where the well-pleaded, non-conclusory allegations, taken as true, fail to state a claim upon which relief can be granted. *Id.* at 679.

Here, having failed both to assert any non-conclusory allegations of conduct or statements by Caremark evidencing or suggesting that it furthered, participated in, agreed to join, or even knew of the AWP-inflation scheme and to plead one or more of the elements of each cause of action against Caremark, Relator has fallen well short of meeting the most basic pleading requirements under Rule 8(a) and his causes of action should be dismissed pursuant to

Rules 12(b)(6) and 9(b).[5/]  Relator's theory as to Caremark — that Caremark must have known of and participated in the purported AWP-inflation scheme because government health plans sometimes (but not always) reimbursed Caremark using Blue Book AWP — is precisely the type of "'unadorned, the-defendant-unlawfully-harmed-me accusation'" that *Iqbal* denounces.  556 U.S. at 678.  Without any factual content, this Court cannot infer even the mere possibility of wrongdoing by Caremark, which is the minimum requirement under *Iqbal* and *Twombly*.  Accordingly, this Court should dismiss with prejudice all of the causes of action asserted against Caremark under Rule 12(b)(6).

    **A.**    <u>**First Cause of Action (False Claim - 3729(a)(1)):**</u>[6/] **Relator Fails to Allege That Caremark Knowingly Presented a False or Fraudulent Claim.**

    The First Cause of Action, under Section 3729(a)(1) of the FCA, requires the following elements: (1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew that the claim was false or fraudulent.  31 U.S.C. § 3729(a)(1) (2008); *United States ex rel. Wilkins v. United Health Group, Inc*., 659 F.3d 295, 304-05 (3d Cir. 2011).  In the absence of non-conclusory allegations as to Caremark, Relator fails to allege any of these elements.

    The first essential element of a Section 3729(a)(1) FCA violation — that the defendant presented to the government a "claim" for payment — is missing from the allegations against

---

[5/]    By failing to allege any specific conduct or statements by Caremark, Relator has entirely failed to meet the basic pleading requirements of Federal Rule of Civil Procedure 8(a).  Because his causes of action utterly fail to satisfy Rule 8(a), they certainly do not meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which is applicable to *qui tam* claims under the FCA.  *See United States ex rel. Schmidt v. Zimmer, Inc*., 386 F.3d 235, 242 n.9 (3d Cir. 2004).  At bottom, Relator does not plead the "who, what, when, where and how" of Caremark's conduct as required under Rule 9(b). *United States ex rel. Feldstein v. Organon, Inc*., No. 07-CV-2690, 2009 U.S. Dist. LEXIS 30093, at *28 (D.N.J. Apr. 7, 2009) (Cavanaugh, J.) (quotation marks omitted) (quoting *In re Rockefeller Ctr. Props. Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)), *aff'd* 364 F. App'x 738 (3d Cir. 2010).

[6/]    Third Amended Complaint ¶¶ 245-46.

Caremark because Relator does not identify a <u>single claim</u> that Caremark submitted to the Government.  This fundamental deficiency is particularly noteworthy given Relator's allegation that he audited Caremark (Third Amended Complaint, ¶ 176), and warrants dismissal under Rule 12(b)(6).  As the Third Circuit has explained, "[t]he [FCA] attaches liability, not to underlying fraudulent activity, but to the claim for payment."  *Hutchins v. Wilentz*, *Goldman & Spitzer*, 253 F.3d 176, 183 (3d Cir. 2001) (citations omitted).  Further, Relator's generalized, conclusory allegations that "Defendants" or "PBM Defendants" submitted claims, absent allegations of any Caremark claims, do not state a cognizable cause of action as to Caremark.  *See United States ex rel. Lobel v. Express Scripts, Inc.,* 351 F. App'x 778, 780 (3d Cir. 2009) (affirming dismissal where plaintiff "allege[d] in conclusory fashion that [defendant Express Scripts, Inc.] violated the False Claims Act by submitting claims for prescriptions filled in violation of [regulations]" and stating "[u]nder *Iqbal*, these conclusory allegations are not presumed to be true"); *see also United States ex rel. Piacentile v. Sanofi Synthelabo, Inc.*, No. 05-2927, 2010 U.S. Dist. LEXIS 137895, at *22 (D.N.J. Dec. 31, 2010).

Relator also fails to allege the second and third elements of the First Cause of Action: that Caremark's claims were false and that Caremark knew that they were false.  First, Relator does not allege that any information in a Caremark claim was false or that any Caremark claim misrepresented AWP.  Instead, Relator contends that falsity exists because First DataBank and McKesson — not Caremark — manipulated Blue Book AWP.  (*See, e.g.,* Third Amended Complaint, ¶¶ 14-17, 157.)  Moreover, Relator does not attempt in any way to connect Caremark to the AWP-inflation scheme, does not allege falsity with regard to Caremark, and does not offer any facts that would support an assertion of falsity on the part of Caremark.  For example,

7

Relator does not allege that Caremark set or participated in setting, or falsified or assisted in falsifying, Blue Book AWP.

Second, Relator does not identify any specific Caremark actions or statements that support Relator's conclusory allegations that Caremark <u>knew</u> that Blue Book AWP was false. Rather, he contends that PBMs generally — but not Caremark specifically — knew that Blue Book AWP was higher than Red Book AWP and/or that Blue Book AWP had "materially changed." (*Id.*, ¶¶ 23, 163.) But the Third Amended Complaint is devoid of any specific factual allegations that Caremark was aware of the price difference, much less that it knew the difference was attributable to fraud. Recently, in *Pilecki-Simko,* the Third Circuit affirmed dismissal of an FCA complaint that, much like Relator's pleading here, failed to allege facts supporting a "reasonable inference" that the defendant knew that submissions to the Department of Education were false because the complaint failed to allege "how [defendants] documented, or were aware or informed of the violations." 443 F. App'x at 761. Likewise here, even assuming that someone at Caremark realized that there was a difference between Blue Book AWP and Red Book AWP, that discovery does not suggest knowledge of fraud, especially given that Relator alleges First DataBank took elaborate steps to conceal the scheme from the marketplace. (*Id.*, ¶¶ 18, 118-132.) Having failed to assert all of the elements of a 3729(a)(1) violation, the First Cause of Action should be dismissed with prejudice under Rule 12(b)(6).

**B.** **<u>Second Cause of Action (False Statement - 3729(a)(2)):</u>**[7/] **Relator Does Not Identify a False Statement That Caremark Made to a Government Health Plan.**

The elements of a Section 3729(a)(2) FCA violation are that a defendant: (1) knowingly; (2) made, used, or caused to be made or used; (3) a false record or statement; (4) to get a false or fraudulent claim paid or approved by the Government. 31 U.S.C. § 3729(a)(2) (2008); *United*

---

[7/]    Third Amended Complaint ¶¶ 247-48.

*States ex rel. Schmidt v. Zimmer, Inc*., 386 F.3d 235, 242 (3d Cir. 2004).  In addition to failing to

allege the elements of knowledge or use, the Third Amended Complaint does not identify a

single statement by Caremark.  Rather, Relator alleges an <u>omission</u> by the "PBM Defendants"

generally, contending that they failed to advise government health plans of the difference

between Blue Book and Red Book AWP.  (Third Amended Complaint, ¶¶ 22, 24, 170.)  But

Relator never alleges an omission on the part of Caremark.  Even if he had made such an

allegation, silence could only be a false statement if Caremark had an obligation to speak.  *See,*

*e.g., United States ex rel. Berge v. Bd. of Trustees of Univ. of Ala.,* 104 F.3d 1453, 1461 (4th Cir.

1997) ("[t]here can only be liability under the False Claims Act where the defendant has an

obligation to disclose omitted information").  The Third Amended Complaint, however, does not

allege that Caremark had an obligation to speak; identify a statutory, regulatory, or contractual

source for Caremark's alleged obligation; or contend that Caremark's failure to speak constituted

a false statement.  Because Relator does not identify any Caremark statements — false or

otherwise — or any affirmative obligation to disclose certain information, as well as Relator's

failure to allege the other elements of a Section 3729(a)(2) FCA violation, the Second Cause of

Action should be dismissed with prejudice under Rule 12(b)(6).

   C.   <u>**Third Cause of Action (Reverse False Claim - 3729(a)(7)):**</u>[8/] **Relator Does Not Allege That Caremark Had Any Obligation to Return Funds to Any Government Health Plan**.

   The elements of a Section 3729(a)(7) "reverse false claim" violation require that a

defendant: (1) knowingly; (2) made, used or caused to be made or used; (3) a false record or

statement; (4) to conceal, avoid, or decrease; (5) an obligation to pay or transmit money or

property to the Government.  31 U.S.C. § 3729(a)(7) (2008).  In addition, pursuant to Section

---

[8/]     Third Amended Complaint ¶¶ 249-50.

9

3729(a)(7), "[r]elators are required to allege that [the defendant] had an existing, legal obligation to pay or transmit money or property to the Government . . . ."  *Schmidt*, 386 F.3d at 242 (quoting *Kennard v. Comstock Resources, Inc.*, 363 F.3d 1039, 1048 (10th Cir. 2004)). Defendant's obligation to the government must be "clear."  *United States ex rel. Quinn v. Omnicare, Inc.*, 382 F.3d 432, 445-46 (3d Cir. 2004).  Here the Third Cause of Action fails to state a claim upon which relief can be granted because Relator (in addition to failing to allege any Caremark knowledge, use, falsity, statement or record) does not identify any obligation by Caremark to repay money to the Government.  Instead, Relator simply parrots the FCA's language and offers no facts in support of his conclusory allegations that "Defendants" had an "obligation" to pay money to the Government.  (Third Amended Complaint, ¶ 250.)  Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. 678.  These allegations fall far short of meeting Relator's pleading obligations and should be dismissed with prejudice pursuant to Rule 12(b)(6).

**D.**  **Fourth Cause of Action (Conspiracy - 3729(a)(3)):**[9/]  **Relator Does Not Allege That Caremark Made an Agreement with Any of the Defendants**.

A conspiracy claim under the FCA requires: (1) a conspiracy with one or more persons to defraud the Government; (2) through obtaining payment or allowance of a false or fraudulent claim; and (3) an overt act in furtherance of the conspiracy.  31 U.S.C. § 3729(a)(3) (2008); *United States ex rel. Barlett v. Tyrone Hosp., Inc.*, 234 F.R.D. 113, 123 (W.D. Pa. 2006) (stating "in order to comply with Rule 8(a) when pleading a conspiracy pursuant to 31 U.S.C. § 3729(a)(3), a plaintiff must describe the general composition of the conspiracy, some or all of its broad objectives, and defendant's general role in that conspiracy" (internal quotation marks omitted)).  Relator's conspiracy claim fails to meet Rule 8(a)'s pleading requirements because he

---

[9/]    Third Amended Complaint ¶¶ 251-52.

10

does not plead any of these elements as to Caremark.  Most prominently, he does not allege Caremark's conspiratorial agreement.  Indeed, Relator does not allege any conduct or statements by Caremark tying it <u>in any way</u> to the alleged AWP-inflation scheme.  As a result, there is nothing to support the bald legal conclusion that Caremark entered into an agreement to defraud the government.  *Barlett*, 234 F.R.D. at 124 (dismissing a claim under Section 3729(a)(3), stating that "the Amended Complaint fails to properly allege an agreement, which is the 'essence' of the conspiracy claim based upon 31 U.S.C. § 3729(a)(3)").

Relator's general allegations as to the "PBM Defendants," which are designed to sweep them collectively into the purported AWP-inflation scheme, fall far short of adequately alleging that Caremark entered into an agreement to defraud.  Relator alleges that "[b]ased on their relationship with the drug manufacturers, as well as others in the distribution chain, the PBMs knew that the inflated AWP from First DataBank fraudulently inflated their profits at the expense of government employees and government-funded health programs."  (Third Amended Complaint, ¶ 163.)  That allegation does not meet the *Iqbal* standard as to the PBM Defendants in general, much less Caremark specifically.  556 U.S. at 678-79.  Relator's only specific allegations regarding an agreement to defraud relate <u>solely</u> to First DataBank and McKesson.  (Third Amended Complaint, ¶¶ 95-132.)  Significantly, however, Relator does not allege that Caremark was involved in or knew of First DataBank's and McKesson's scheme, and consequently, under Rule 12(b)(6), the conspiracy cause of action against Caremark should fail.

**E.    <u>Fifth Cause of Action (False Claim Through Breach of Contract)</u>:[10] Relator Does Not Identify Any Contract Between Caremark and Any Government Health Plan.**

As an initial matter, Relator does not identify which of the eight FCA sections Caremark

---

[10]    Third Amended Complaint ¶¶ 253-61.

purportedly violated, so the Fifth Cause of Action should be dismissed on that ground alone

under Rule 12(b)(6).[11/]   In the Fifth Cause of Action, Relator alleges the presentation of a false

claim to the Government through the breach of contractual duties owed to government health

plans.  It is axiomatic that a cause of action for breach of contract requires at its core the

existence of a contract.  *Mercado v. Bank of Am., N.A.*, No. 2:12-01123, 2012 U.S. Dist. LEXIS

163395, at *8-9 (D.N.J. Nov. 15, 2012).  Relator, however, fails to identify or attach the

Caremark contract(s) allegedly breached, the parties thereto, or the terms thereof.

These pleading failures are not trivial.[12/]   Relator's allegations demonstrate that the

contracts that might form the basis of his FCA causes of action are not standard-form contracts

with uniform terms and conditions, but rather were varied agreements with differing terms.  (*See,

e.g.*, Third Amended Complaint, ¶ 187.)  Thus, Relator's failure to identify any Caremark

contracts is not a mere technical deficiency, but rather a fundamental flaw in his pleading that

drastically and detrimentally affects Caremark, which cannot defend against Relator's claims

without knowing which contracts are at issue.  *See In re Dynegy, Inc. Secs. Litig.*, 339 F. Supp.

2d 804, 894 (S.D. Tex. 2004) (dismissing fraud claims based on improper valuations of contracts

where plaintiff failed to include information about the contracts).

Moreover, even if he had alleged a cognizable breach of contract case (which he has not),

it is well-settled that "[n]ot every breach of a federal contract is an FCA problem."  *United States*

*ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010); *see also United States*

*ex rel. Wilson v. Kellogg Brown & Root*, *Inc.*, 525 F.3d 370, 373 (4th Cir. 2008) ("If every

---

[11/]   The Sixth and Seventh Causes of Action suffer from this same fundamental pleading deficiency, and they should be dismissed under Rule 12(b)(6) for the same reason.

[12/]   Relator's failure is troubling given that he claims to have reviewed PBM contracts in "the course of his many audits," and to be "intimately involved with renegotiating PBM contracts" on behalf of numerous clients.  (Third Amended Complaint, ¶¶ 187, 188.)

dispute involving contractual performance were to be transformed into a *qui tam* FCA suit, the prospect of litigation in government contracting would literally have no end.").  Additionally, Relator has failed to allege all of the elements of this cause of action.  Accordingly, pursuant to Rule 12(b)(6), the Fifth Cause of Action should also be dismissed with prejudice.

F.   **Sixth Cause of Action (False Claim Through Breach of Implied Covenant):**[13] **Relator Has Not Alleged a Breach of the Implied Covenant of Good Faith and Fair Dealing**.

The Sixth Cause of Action asserts an FCA violation based on an alleged breach of the implied covenant of good faith and fair dealing.  Fundamentally, there can be no breach of the implied covenant of good faith and fair dealing without a breach of contract.  *Jang v. Boston Sci. Scimed, Inc.*, No. 10-681, 2012 U.S. Dist. LEXIS 106627, at *12-13 (D. Del. July 31, 2012). Further, to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must assert that "the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties."  *Mercado*, 2012 U.S. Dist. LEXIS 163395, at *9 (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387 (N.J. 2005)).  "The requirement of good-faith performance ultimately is circumscribed by the obligations — the contractual 'fruits' — actually contained in the agreement."  *Jang v. Boston Sci. Scimed, Inc.*, 817 F. Supp. 2d 409, 416 (D. Del. 2011) (quoting *AccuSoft Corp. v. Palo*, 237 F.3d 31, 45 (1st Cir. 2001)).

The Sixth Cause of Action should fail because Relator has not pleaded the elements required for this cause of action, and he has not: (1) identified any contract between Caremark and a government health plan or the breach of such a contract; or (2) made any non-conclusory allegations that Caremark acted in bad faith.  As a result, his Sixth Cause of Action should be dismissed with prejudice under Rule 12(b)(6).

---

[13]   Third Amended Complaint ¶¶ 262-65.

**G.      Seventh Cause of Action (False Claim Through Breach of Fiduciary Duty):**[14]
**Relator Does Not Identify the Source of Caremark's Alleged Fiduciary Duty**
**to Any Government Health Plan**.

The Seventh Cause of Action asserts an FCA violation based upon an alleged breach of a

fiduciary duty.  Relator does not, however, allege the elements of this cause of action.

Fundamentally, Relator fails to identify a fiduciary duty owed by Caremark to the Government.

That deficiency is fatal, as "the existence of a fiduciary duty is an element of a claim for breach

of fiduciary duty." *Mercado*, 2012 U.S. Dist. LEXIS 163395, at *10.

As one court has observed, "[t]o distinguish between a fiduciary relationship and a

typical business relationship, courts look to factors such as the parties' intent, the length of their

relationship, their financial interdependence, and their sharing of confidential and proprietary

information."  *In re Express Scripts, Inc. Pharm. Benefits Mgmt. Litig.*, No. 1672, 2007 U.S.

Dist. LEXIS 44722, at *26 (E.D. Mo. June 20, 2007).  That fact-specific inquiry is impossible

here because Relator has not made any factual allegations as to Caremark: Relator does not

identify a contract; describe the intent of the parties when entering into the contract; set forth the

length of Caremark's relationship with any government health plan; enumerate the parties'

interdependence; or disclose what Caremark did to "encourage" the Government to place special

trust in it to negotiate the lowest possible price.  (Third Amended Complaint, ¶ 267.)

Instead, Relator asserts the bald legal conclusion that Caremark owed a fiduciary duty to

government health plans.  But that mere assertion of a fiduciary duty without any factual

underpinnings is not enough.  *Iqbal*, 556 U.S. at 678; *see also Foglia*, No. 09-1552, 2012 U.S.

Dist. LEXIS 139160, at *6.  Relator's bald assertion is also not sufficient because Caremark is

---

[14]      Third Amended Complaint ¶¶ 266-70.

not, by its nature, a fiduciary.[15]  Indeed, in a case against Caremark by a welfare fund for breach of fiduciary duty under ERISA, the Seventh Circuit held that Caremark was not a fiduciary.  *See Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 465-66 (7th Cir. 2007).  There, the court decided that because the prices set in the contracts resulted from arms-length negotiations and Caremark could not unilaterally change those prices, Caremark could not be held liable for breach of fiduciary duty related to retail pharmacy prices.  *Id.* at 472-73.  Thus, because Relator has not alleged facts suggesting a fiduciary duty owed by Caremark, the Seventh Cause of Action should be dismissed with prejudice under Rule 12(b)(6).

**H.**   **Eighth Through Thirtieth Causes of Action:**[16] **Relator's State FCA Claims Fail to Allege Any Caremark Conduct With Regard to Any of the States Listed in These Causes of Action.**

Relator's state FCA causes of action (Causes of Action Eight through Thirty) rely on the same allegations as the federal FCA claims and suffer from the same defects with respect to Caremark.[17]  The Third Amended Complaint does nothing more than quote the elements of each state FCA and place the word "Defendant" before each statutory quote.  These allegations are precisely the type of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that *Iqbal* rejected. 556 U.S. at 678.  Indeed, there are no

---

[15]      Courts have overwhelmingly decided that PBMs are not fiduciaries (typically in the context of ERISA).  *See Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 465-66 (7th Cir. 2007); *Mulder v. PCS Health Sys., Inc.*, 432 F. Supp. 2d 456, 456 (D.N.J. 2006); *Bickley v. Caremark Rx, Inc.*, 361 F. Supp. 2d 1317, 1340 (N.D. Ala. 2004).

[16]      Third Amended Complaint ¶¶ 271-420.

[17]      In addition to these defects, Relator has added new claims under state FCAs enacted <u>after</u> Relator filed his original Complaint.  To the extent that such state FCAs were not effective at the time the alleged false claims were submitted and the statutes are not expressly retroactive, the Court should dismiss the claims.  *See Massachusetts v. Schering-Plough Corp.*, 779 F. Supp. 2d 224, 238 (D. Mass. 2011) (declining to apply the Massachusetts FCA retroactively); *see also Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280 n.1 (2010) (stating that FCA amendments have no retroactive effect when there is "no mention of retroactivity, which would be necessary for its application to pending cases").

allegations that Caremark had a contractual relationship for the provision of services with any of the twenty-two states and the District of Columbia.  Nor are there allegations that Caremark submitted any claims for reimbursement to any of these states or to the District of Columbia. Without these basic facts, Relator's state-law FCA causes of action cannot survive and should be dismissed under Rule 12(b)(6).[18/]

I.    **Relator Pleads Only Conclusory Allegations of "Other Pricing Schemes" and Fails to Allege That the Purported Pricing Schemes Caused FCA Violations (Third Amended Complaint ¶¶ 198-225).**

Without tying them to any specific causes of action, Relator parades a string of non-specific allegations against the "PBM Defendants" generally, calling them "other pricing schemes."  But Relator does not describe Caremark's allegedly unlawful conduct nor does he identify which FCA section Caremark's conduct allegedly violated, thus perpetuating the pleading deficiencies as to Caremark that infect the rest of the Third Amended Complaint. (Third Amended Complaint, ¶¶ 198-225.)  Instead, Relator sweeps Caremark up with the "PBM Defendants," alleging the same conduct by all.  Such generalized allegations as to a group of undifferentiated defendants are neither credible nor legally sufficient.[19/]  Finally, the Third Amended Complaint does not describe how this amalgamation of allegations relates to any of Relator's causes of action for violations of the federal FCA and its state analogues.  Devoid of such connection, Relator simply casts aspersions on Caremark, hoping to conjure up a claim.

---

[18/]    If the Court dismisses Relator's federal law claims, the Court should not exercise supplemental jurisdiction over these claims.

[19/]    Indeed, "allegations that generally allege fraud as against multiple defendants . . . without informing each defendant as to the specific fraudulent acts he or she is alleged to have committed do not satisfy Rule 9(b)."  *Poling v. K. Hovnanian Enters.*, 99 F. Supp. 2d 502, 508 (D.N.J. 2000).

**IV.     Conclusion**

Relator's attempts to bring thirty causes of action against Caremark—through a complaint in which only ten paragraphs even mention Caremark, none of which are included in any of the thirty causes of action—fall far short of meeting the pleading requirements of Rules 8(a) and 9(b).  Accordingly, Caremark respectfully submits that this Court should dismiss, with prejudice, all causes of action against it in the Third Amended Complaint.

Respectfully Submitted,

**CVS Caremark,**

By its attorneys,

MARINO, TORTORELLA & BOYLE, P.C.

Dated: April 16, 2013                              By   /s/ Kevin H. Marino
Chatham, New Jersey                                      Kevin H. Marino

17